# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**UNION MUTUAL FIRE INSURANCE COMPANY,**

           **Plaintiffs,**

v.

**KOLB RADIOLOGY, P.C., THOMAS M. KOLB, MD, and MELISSA LIRIANO,**

           **Defendants.**

Case:

## ORIGINAL COMPLAINT

Plaintiff UNION MUTUAL FIRE INSURANCE COMPANY (hereinafter referred to as "Union") by and through their attorneys THE WILLIS LAW GROUP, LLC, allege as follows:

### I. JURISDICTION AND VENUE

1. This is a civil action to recover payments Union was fraudulently induced to make to the defendants as described herein. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the parties are diverse from each other, and the payments sought to be recovered exceed $75,000.00.

2. Venue is proper in this District under and pursuant to 28 U.S.C. § 1391, in that one or more of the defendants resides in this District and all defendants are residents of the State of New York.

### II. THE PARTIES

#### A. Plaintiff

3. Plaintiff UNION MUTUAL FIRE INSURANCE COMPANY is duly organized and existing under the laws of the State of Vermont and maintains its office in that state.

B. **Defendants**

4. Defendant KOLB RADIOLOGY, P.C. ("Kolb Practice") is a professional corporation duly organized and existing under the laws of the State of New York. At all times relevant herein, the Kolb Practice maintained its principal place of business in the State of New York and is authorized to and does conduct business in New York.

5. Upon information and belief, Defendant THOMAS M. KOLB, MD ("Kolb") resides in and is a citizen of the State of New York. At all relevant times herein, Kolb has been licensed or otherwise authorized to practice medicine in the State of New York and is the owner, operator, officer, director and/or employee of the Kolb Practice.

6. Upon information and belief, Defendant MELISSA LIRIANO ("Liriano") resides in and is a citizen of the State of New York. At all relevant times herein, Liriano was the employee of the Kolb Practice.

7. The Kolb Practice, Kolb and Liriano are collectively referred to herein as "Defendants."

III. **FACTUAL BACKGROUND**

A. **Fraud Scheme**

8. From at least 2018 to the present, Defendants, for their financial benefit, orchestrated a scheme ("Fraud Scheme") to defraud Plaintiff and others by creating and using fraudulent diagnoses and medically unnecessary and excessive healthcare services to submit claims for reimbursement for services rendered.

9. Generally, as part of the Fraud Scheme, the Defendants would examine patients referred by other medical providers. Such patients were seeking medical treatment for bodily

injuries stemming from purported accidents, including, but not limited to, construction, motor vehicle and slip and fall accidents.

10. The Defendants would conduct radiological diagnostics, including x-rays and magnetic resonance imaging ("MRI"), on the patients, and thereafter create medical reports with the results. The reports provided findings and impressions that did not exist and/or failed to report findings and impressions that would have medically established that such injuries were degenerative, chronic and not acute or casually connected to the alleged accident.

11. The Defendants knew of the falsity of the reports and understood and agreed that in turn for providing the false medical reports to referring medical providers, the Defendants would continue to have patients referred to them.

12. Defendants remitted invoices for payment founded upon the testing and false medical reports. The submission of such documentation misled Plaintiff and others into believing that the testing was necessary and that claims for payment were legitimate in violation of New York Insurance Law § 403, New York Penal Law § 176.05 and New York Workers' Compensation Law § 114. Under such laws, Defendants' conduct as demonstrated herein constitutes fraud.

13. Furthermore, Defendants knew or should have known that subsequent diagnoses and treatment, including expensive surgeries, and general liability lawsuits would be predicated upon their false reports and that payment for such subsequent treatment would be sought and issued and that costs to defend such lawsuits be incurred. Accordingly, Plaintiff was induced to and did pay Defendants directly and others due to, in whole or in part, the Defendants' conduct.

### B. Fraudulent Treatment and Diagnosis

14. The Defendants engaged in the Fraud Scheme resulting in unnecessary treatment and a significant number of fraudulent claims and lawsuits being filed. For example, the following are just a fraction of the fraudulent claims for which Plaintiff seeks recovery of payment.

    i.    Claimant A

15. Claimant A was allegedly injured on or about July 11, 2020, when Claimant A slipped and fell while upon a premise that was covered by a policy issued by Plaintiff. Following the alleged accident, Claimant A presented to Dr. Charles Kaplan for injuries. Dr. Kaplan referred Claimant A to Defendants for an MRI of the left shoulder.

16. On or about August 17, 2020, Claimant A presented to the Kolb Practice to obtain the requested MRI of the left shoulder. Following the exam, the Kolb Practice generated a report signed by Kolb representing that there was a tear of the anterior labrum extending superiorly and inferiorly with associated joint effusion.

17. The report generated by the Defendants was false and misleading. Specifically, Dr. Jonathan Lerner, a board-certified radiologist licensed in New York, New Jersey and Connecticut and current Director of Musculoskeletal Imaging for Catholic Health Services of Long Island, conducted an independent review of Claimant A's left shoulder MRI and found no evidence of a labral tear. He further found that the anterior labrum was visualized on sagittal and axial images without evidence of a discrete tear or abnormal labral signal.

18. The Defendants knew that their report was false and misleading, and intentionally transmitted it to Dr. Kaplan, Plaintiff and others whom the Defendants also knew and/or should have known would use the report as a basis to render unnecessary treatment, engage in litigation

and, seek payments and settlements. The Defendants also knew that the Plaintiff would and did pay for the Defendants' false exam records.

19. Based on the issuance and submission of the fraudulent report and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would have either not been brought or would have been resolved earlier but for such report.

   ii. <u>Claimant B</u>

20. Claimant B was allegedly injured on or about September 10, 2020, when Claimant B tripped and fell while upon a staircase. Following the alleged accident, Claimant B presented to Dr. Kevin H. Weiner. Dr. Weiner referred Claimant B to Defendants for an MRI of the cervical spine.

21. On or about November 7, 2020, Claimant B presented to the Kolb Practice to obtain the requested MRI of the cervical spine. Following the exam, the Kolb Practice generated a report signed by Kolb reporting that at C5-C6 there was a central posterior disc herniation impinging upon the thecal sac abutting the spinal cord with narrowing of the left-sided neural foramen yet also reported that the spinal cord signal is normal.

22. The report generated by the Defendants was false and misleading. Specifically, Dr. Alok D. Sharan, an orthopedic surgeon licensed in New York and current Co-Director of Spine and Orthopedics at NJ Spine and Wellness, conducted an independent review of Claimant B's cervical spine MRI in preparation of a medical exam of Claimant B. Dr. Sharan noted that the finding of a C5-C6 central posterior disc herniation impinging upon the thecal sac abutting the spinal cord with narrowing of the left-sided neural foramen and normal spinal cord signal is

inconsistent with the Defendants' impression that the disc herniation impinges upon the spinal cord.

23. The Defendants knew that their report was false and misleading, and intentionally transmitted it to Dr. Weiner, Plaintiff and others whom the Defendants also knew and/or should have known would use the report as a basis to render treatment, engage in litigation, and seek payments and settlements. The Defendants also knew that the Plaintiff would and did pay for the Defendants' false exam records.

24. Based on the issuance and submission of the fraudulent report and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would have either not been brought or would have been resolved earlier but for such report.

    iii.    <u>Claimant C</u>

25. Claimant C was allegedly injured on or about May 26, 2022, when Claimant C tripped and fell while walking through an alleyway. Following the alleged accident, Claimant C presented to Dr. Joseph Weinstein. Dr. Weinstein referred Claimant C to the Defendants for an MRI of the left and right knees.

26. On or about July 21, 2023, Claimant C presented to the Kolb Practice to obtain the requested MRI of the left and right knees. Following the exam, the Kolb Practice generated a report signed by Kolb representing findings that the right knee had a meniscal tear, semimembranosus tendon tear, and anterior cruciate ligament tear. The Kolb Practice also generated a report signed by Kolb representing findings that the left knee had a meniscal tear and medial collateral ligament tear.

27. The reports generated by the Defendants were false and misleading. Specifically, Dr. Jonathan S. Luchs, a board-certified radiologist licensed in New York and Chief Medical Officer and Partner at Premier Radiology Services, LLC, conducted an independent radiology review of Claimant C's right knee MRI. Dr. Luchs noted that the tears to the right knee reported by the Defendants were not present. Dr. Luchs also performed an independent radiology review of Claimant C's left knee MRI and noted that there were no meniscal or medial collateral ligament tears.

28. The Defendants knew that their reports were false and misleading, and intentionally transmitted them to Dr. Weinstein, Plaintiff and others whom the Defendants also knew and/or should have known would use the reports as a basis to render treatment, engage in litigation, and seek payments and settlements. The Defendants also knew that the Plaintiff would pay for the Defendants' false exam records.

29. Based on the issuance and submission of the fraudulent reports and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would have either not been brought or would have been resolved earlier but for such report.

  iv. <u>Claimant D</u>

30. Claimant D was allegedly injured on or about August 10, 2018, when Claimant D was walking on a sidewalk and tripped and fell. Following the alleged accident, Claimant D presented to Dr. Felix Karafin. Dr. Karafin referred Claimant D to the Defendants for an MRI of the left knee and lumbar spine.

31. On or about December 18, 2018, Claimant D presented to the Kolb Practice to obtain the requested MRI of the left knee and lumbar spine. Following the exam, the Kolb Practice

generated a report signed by Kolb representing findings that the left knee had a 2.5-centimeter subchondral nondisplaced trabecular fracture. The Kolb practice also generated a report signed by Kolb representing findings that the lumbar spine had a shallow posterior disc herniation at L5-S1 impinging upon the anterior epidural fat and abutting the thecal sac.

32. The reports generated by the Defendants were false and misleading. Specifically, Dr. Jonathan Lerner, a board-certified radiologist licensed in New York, New Jersey and Connecticut and current Director of Musculoskeletal Imaging for Catholic Health Services of Long Island, conducted an independent radiology review of Claimant D's left knee MRI and found no evidence of a fracture. Dr. Lerner also conducted an independent radiology review of Claimant D's lumbar spine MRI and found no disc herniation at L5-S1. Rather, there was mild diffuse disc bulge with effacement of the thecal sac and no evidence of central canal spinal stenosis or neural foraminal narrowing, which is inconsistent with disc herniation. Moreover, there was no evidence of epidural or paraspinal mass or fluid collection.

33. The Defendants knew that their reports were false and misleading, and intentionally transmitted them to Dr. Weinstein, Plaintiff and others whom the Defendants also knew and/or should have known would use the reports as a basis to render treatment, engage in litigation, and seek payments and settlements. The Defendants also knew that the Plaintiff would pay for the Defendants' false exam records.

34. Based on the issuance and submission of the fraudulent reports and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would have either not been brought or would have been resolved earlier but for such report.

v.     <u>Claimant E</u>

35.    Claimant E was allegedly injured on or about December 16, 2019, when Claimant E was walking on a sidewalk and tripped and fell. Following the alleged accident, Claimant E presented to Dr. Felix Karafin for injuries. Dr. Karafin referred Claimant E for an MRI of the lumbar spine and right ankle.

36.    On or about February 3, 2020, Claimant E presented to the Kolb Practice to obtain the requested MRI of the lumbar spine and right ankle. Following the exam, the Kolb Practice generated a report signed by Kolb representing findings of a shallow posterior disc herniation at L4-5 impinging upon the thecal sac and a disc bulge at L5-S1. The Kolb practice also generated a report signed by Kolb representing that there was a tear of the posterior talofibular ligament with associated joint effusion of the right ankle.

37.    The reports generated by the Defendants were false and misleading. Specifically, Dr. Jonathan S. Luchs, a board-certified radiologist licensed in New York and Chief Medical Officer and Partner at Premier Radiology Services, LLC, performed an independent radiology review of Claimant E's lumbar spine. Dr. Luchs noted that there is no evidence of disc herniations, annular tears or nerve root impingement. There is evidence of congenitally short pedicles that Kolb failed to report. Such finding, if reported, would reflect Dr. Luch's impression that the MRI of the lumbar spine demonstrates mild early degenerative changes of the discs. Moreover, that such findings are not posttraumatic or secondary to Claimant E's alleged injuries. Dr. Luchs also performed an independent radiology review of Claimant E's right ankle MRI and noted that there is no tear of the posterior talofibular ligament because it appears normal in signal and morphology without evidence of tear or sprain. Although Dr. Luchs also found fluid in the tibiotalar joint, it was only physiological in volume, which was not reported by the Defendants. The Defendants

also failed to report evidence of minimal lateral ankle subcutaneous edema and chronic mild peroneus brevis tendinosis. Importantly, this demonstrates chronic conditions that predate the alleged injury.

38. The Defendants knew that the reports were false, misleading and intentionally transmitted them to Dr. Karafin, Plaintiff and others where the Defendants also knew and/or should have known that such provider(s) would use the report as a basis to render treatment, engage in litigation, and seek payments and settlements. The Defendants also knew that the Plaintiff would pay for the Defendants' false exam records.

39. Based on the submission of the fraudulent reports and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would have either not been brought or would have been resolved earlier but for such report.

  **C.**   **Defendants' Participation in the Fraud Scheme**

40. At all relevant times, the Defendants individually or in unison, coordinated the examination, diagnosis, reports, transmission of such to other medical providers and the submission of insurance claim forms.

41. Since at least 2018, the Defendants have been involved in hundreds of lawsuits involving purported injuries in furtherance of the Fraud Scheme. Such lawsuits are not limited to just ones against Union's insureds.

42. Kolb, as a radiologist and a principal of the Kolb Practice, controlled and directed the medical services provided to patients by providing radiological and imaging diagnostics and MRI reports identifying purported positive findings without correlation to degenerative conditions and providing inaccurate findings of the Claimants' conditions.

43. As part of the Fraud Scheme, the Kolb Practice, Kolb and Liriano, as the long-time office manager of the Kolb Practice, knowingly and intentionally submitted or caused the submission of fraudulent medical documentation either directly or indirectly to Plaintiff for which Defendant was paid that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident or did not exist.

44. As part of the Fraud Scheme, Kolb and Liriano provided fraudulent medical documentation by mail, facsimile and/or email to attorneys and other medical service providers knowing that the fraudulent medical documentation would be used or relied upon to initiate or prolong litigation with inflated settlement demands and render additional medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident or did not exist.

45. The Defendants knowingly profited from reimbursements for the alleged imaging and diagnostic services rendered by the Kolb Practice and/or Kolb that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident or did not exist but were rendered in furtherance of the Fraud Scheme.

46. The Defendants also knowingly profited from the increased number of patients who were referred to them as part of the Fraud Scheme, for whom the Kolb Practice and Kolb provided imaging and diagnostic services and received reimbursement for such services.

## IV. **DAMAGES**

47. Plaintiff is an insurance carrier which underwrites policies that cover the various claims and lawsuits filed and prosecuted by patients examined as part of the Fraud Scheme. A current list of claims that are substantially identical or similar to those demonstrated herein and at issue is attached hereto as Exhibit "A".

48. Plaintiff made substantial payments to Defendants and sustained significant damage in connection with the claims listed on Exhibit "A". Such damages include actual and consequential damages for the payments that Union made as reimbursement for payments made directly to the Defendants due to Defendants' pattern of fraudulent conduct. Damages also include actual and consequential damages for payments Union made as costs for defending fraudulent lawsuits and/or for reimbursement for payments made to other medical providers for treatment predicated upon, in whole or in part, the fraudulent reports generated by the Defendants. Although it is not necessary for Plaintiff to calculate damages with specificity at this stage in the litigation (whereas Plaintiff's damages continue to accrue), Plaintiff's injuries amount to at least $4,685,532.83.

## V. CAUSES OF ACTION

### COUNT I
### Common Law Fraud

49. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

50. Defendants made misrepresentations of facts, misled, deliberately concealed, and omitted materials facts that they had a duty to disclose in connection with their claims for reimbursement and/or payment under New York law.

51. These misrepresentations of fact by Defendants included, but were not limited to, the material misrepresentations of fact made in asserting the legitimacy and existence of injuries and the necessity of treatment.

52. Defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

53. Defendants made these misrepresentations in furtherance of the scheme to defraud Plaintiff and others by issuing false reports and inducing others to perform treatment or pursue litigation they knew or should have known would not have occurred otherwise.

54. Defendants' misrepresentations were known to be false from the onset and were made for the purpose of inducing Plaintiff to make payments for claims that were not legitimate.

55. Plaintiff reasonably and justifiably relied, to its detriment, on the truthfulness of Defendants' representations concerning their eligibility to receive payments of insurance benefits, on the completeness of their disclosures of material facts, and without knowledge of Defendants' scheme and artifice to defraud them.

56. Defendants knew, or should have known, that Plaintiff would rely on and intended that Plaintiff rely on their truthfulness.

57. But for the Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct, Plaintiff would not have paid insurance benefits.

58. Plaintiff at no time knew or had reason to know in the exercise of due diligence or reasonable care that Defendants were engaged in misrepresentations, omissions, concealment of material facts, and fraudulent conduct.

59. As a direct and proximate cause of Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct by Defendants, Plaintiff has been damaged. Plaintiff's damages include, but are not necessarily limited to, benefit payments paid by Plaintiff to Defendants or those caused by Defendants.

60. Because Defendants' conduct was knowing, intentional, willful, wanton, and reckless, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for:

(a) An award of Plaintiff's actual and consequential damages to be established at trial;

(b) An award of punitive damages;

(c) Plaintiff's costs; and

(d) Such other relief as the Court deems just and proper.

## Count II
## Unjust Enrichment

61. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

62. As described above, Defendants conspired to induce Plaintiff to make or expend numerous and substantial payments to them or others.

63. The Defendants were never eligible to make claims or seek reimbursement under New York law because, at all relevant times, the injuries and treatment were fraudulent.

64. When Plaintiff paid Defendants and others, Plaintiff reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Defendants, or those persons working under their control, made concerning Defendants' eligibility to make claims or seek reimbursement under New York law.

65. Each and every payment that Plaintiffs made or was caused to make to Defendants and others during the course of the Fraud Scheme constitutes a benefit, either directly or through increased referrals, that the Defendants sought and voluntarily accepted.

66. Throughout the course of their scheme, Defendants wrongfully obtained from Plaintiff benefit payments as a direct and proximate result of the unlawful conduct detailed above.

67. Retention of those benefits by Defendants would violate fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for:

(a) An award of Plaintiff's actual and consequential damages to be established at trial; and

(b) Such other relief as the Court deems just and proper.

## Count III
## Declaratory Relief Pursuant to 28 U.S.C. § 2201

68. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

69. Pursuant to 18 U.S.C. § 2201(a), the Court may determine the rights and legal obligations of the parties.

70. There is an actual case and controversy between Plaintiff on the one hand, and Defendants on the other hand, as to all charges for examinations, records, and other costs of defense that have not been paid to date and/or will be incurred through the pendency of the claims made the basis of this lawsuit.

71. Because these Defendants have made false and fraudulent statements and otherwise engaged in the fraudulent conduct described above with the intent to conceal, mislead and misrepresent material facts and circumstances regarding each claim submitted, these Defendants were not entitled to any reimbursement.

WHEREFORE, Plaintiff demands judgment against Defendants for:

(a) A declaration that Defendants, at all times relevant, have sought reimbursement for providing fraudulent healthcare records in violation of New York law;

(b) Declare that Defendants' activities are unlawful;

(c) Declare that Plaintiff is entitled to the return of payments made directly to the Defendants as a result of Defendants' unlawful conduct; and

(d) Such other relief as the Court deems just and proper.

## VI. JURY TRIAL DEMAND

72. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims.

Dated: August 29, 2024

        Respectfully submitted,

        **THE WILLIS LAW GROUP, PLLC**

        By: */s/ William J. Clay*
        **WILLIAM J. CLAY** *(pro hac pending)*
        **MICHAEL A. GRAVES**
        **AARON E. MEYER**
        **KIRK D. WILLIS** *(pro hac pending)*
        1985 Forest Lane
        Garland, Texas 75042
        Telephone: 214-736-9433
        Facsimile: 214-736-9994
        Service Email: service@thewillislawgroup.com

        ***ATTORNEYS FOR THE PLAINTIFF***
        **UNION MUTUAL FIRE INSURANCE COMPANY**