UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNION MUTUAL FIRE INSURANCE
COMPANY,

                    Plaintiff,

        - against -

KOLB RADIOLOGY, P.C., THOMAS M.
KOLB, M.D., and MELISSA LIRIANO,

                    Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-6082 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

Plaintiff Union Mutual Fire Insurance Company ("Plaintiff") brings this diversity action against Kolb Radiology, P.C. ("Kolb Radiology"), Thomas M. Kolb, M.D. ("Kolb"), and Melissa Liriano ("Liriano") (together, "Defendants"). Plaintiff alleges common law fraud and unjust enrichment claims and seeks damages and declaratory relief. (Second Amended Compl. ("SAC"), Dkt. 38.) Defendants now move to dismiss the SAC under Federal Rule of Civil of Procedure ("Rule") 12(b)(1) and 12(b)(6). (Mot. to Dismiss ("Mot."), Dkt. 52.) For the reasons explained below, the Court denies Defendants' motion to dismiss ("motion") Counts I & II as to Kolb and Kolb Radiology; grants the motion as to Count III as to Kolb and Kolb Radiology; and grants the motion in its entirety as to Defendant Liriano.

## BACKGROUND

### I.    Factual Background[1]

Plaintiff is an insurance carrier incorporated in Vermont. (SAC, Dkt. 38, ¶¶ 3, 65.) Kolb is a physician and the owner of Kolb Radiology, (*id.* ¶¶ 5, 61), of which Liriano is "the long-time

---

[1] For purposes of the motion, the Court accepts as true all non-conclusory factual allegations in the Second Amended Complaint ("SAC"). *See Bldg. Indus. Elec. Contractors Ass'n*

office manager," (*id.* ¶ 62).[2]  Plaintiff alleges that "in the Defendants' usual course of business," they "evaluate patients who are engaged with law firms and lawsuits for alleged injuries resulting from accidents."  (*Id.* ¶ 12.)  "Such patients were seeking medical treatment for bodily injuries stemming from purported accidents, including, but not limited to, construction, motor vehicle and slip and fall accidents."  (*Id.* ¶ 9.)  Defendants thus "commonly engage with workers' compensation, New York No-Fault and Motor Vehicle, and general liability insurance carriers to report documentation related to diagnosis and treatment and seek payments for reimbursement."  (*Id.* ¶ 12.)  As part of this engagement, "Defendants . . . conduct radiological diagnostics, including x-rays and magnetic resonance imaging ('MRI'), on the patients, and thereafter create medical reports with the results."  (*Id.* ¶ 10.)

Plaintiff alleges that since "at least 2018," Defendants have "orchestrated a scheme . . . to defraud Plaintiff and others by creating and using fraudulent diagnoses and medically unnecessary and excessive healthcare services to submit claims for reimbursement for services rendered."  (*Id.* ¶ 8.)  Defendants created and submitted medical reports that "provided findings and impressions that did not exist and/or failed to report findings and impressions that would have medically established that such injuries were degenerative, chronic and not acute or [causally] connected to the alleged accident."  (*Id.* ¶ 10.)  Defendants then "remitted invoices for payment founded upon the testing and false medical reports."  (*Id.* ¶ 13.)  "The submission of such documentation misled Plaintiff and others into believing that the testing was necessary and that claims for payment were legitimate . . . ."  (*Id.*)  Defendants' false reports triggered "subsequent diagnoses and treatment,

---

*v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001).

[2] Plaintiff is "duly organized and existing under the laws of the State of Vermont," and Defendants are citizens of New York.  (SAC, Dkt. 38, ¶¶ 3–6.)

including expensive surgeries, and general liability lawsuits." (*Id.* ¶ 14.)  In addition, "payment for such subsequent treatment [was] . . . sought and issued[,] and . . . costs to defend such lawsuits [were] . . . incurred[,] including costly and inflated settlements of said lawsuits." (*Id.*)

Plaintiff details the diagnostic and treatment history of six claimants as "just a fraction" of the allegedly "fraudulent claims for which Defendants' scheme was employed and contributed to Plaintiff's damages." (*Id.* ¶ 15; *see also id.* ¶¶ 16–58 (detailing Claimants A through F).)  As examples of the damages it claims, Plaintiff alleges that it "was caused to pay $480,000.00 for the resolution" of the action related to Claimant D, (*id.* ¶ 36) and "$650,000.00 for the resolution" of the action related to Claimant F, (*id.* ¶ 58) (both exclusive of litigation costs).  Plaintiff asserts that it was caused to pay "a total of $2,382,500 in settlements based on the fraudulent reports generated by Defendants to date." (*Id.* ¶ 67.)  Including other actual and consequential damages, such as litigation costs, Plaintiff claims injuries that "amount to at least $5,485,532.83," (*id.* ¶ 68), as well as "further settlements [that are] imminent," (*id.* ¶ 67).  Plaintiff includes as an exhibit to its SAC a redacted list of 52 total potential claimants whose medical records allegedly contained fraudulent findings.  (*Id.* ¶ 65; *see* Ex. A, Dkt. 38-1.)

## II.    Procedural History

Plaintiff initiated this action on August 29, 2024.  (Compl., Dkt. 1.)  Defendants filed a request for a pre-motion conference ("PMC") on November 15, 2024, ahead of their intended motion to dismiss.  (Dkt. 15.)  Before the scheduled PMC, Plaintiff filed an amended complaint. (12/11/2024 Scheduling Order; Am. Compl., Dkt. 23.)  The PMC was subsequently rescheduled, (1/15/2025 Dkt. Order), and eventually held on February 13, 2025, (2/13/2025 Min. Entry). During the PMC, the Court granted Plaintiff leave to file another amended complaint.  (*Id.*) Accordingly, Plaintiff filed the SAC on February 28, 2025.  (SAC, Dkt. 38.)  Defendants filed another PMC request ahead of an intended motion to dismiss the SAC on March 4, 2025, (Dkt. 41),

3

which the Court denied as unnecessary, (3/13/2025 Dkt. Order).  Defendants' motion to dismiss was fully briefed on May 14, 2025.  (*See* Mot., Dkt. 52; Mem. in Supp. of Mot. ("Mem."), Dkt. 53; Pl. Opp'n, Dkt. 51; Def. Reply, Dkt. 55.)

## LEGAL STANDARDS

### I.       Rule 12(b)(1)

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  Federal courts have the statutory power to adjudicate cases through either diversity jurisdiction or federal question jurisdiction.  *Smulley v. Safeco Ins. Co. of Illinois*, No. 21-CV-2124, 2022 WL 16753118, at *1 (2d Cir. Nov. 8, 2022) (summary order) (citing 28 U.S.C. §§ 1331, 1332).  With respect to diversity jurisdiction pursuant to 28 U.S.C. § 1332 ("Section 1332"), "federal courts have jurisdiction to hear civil actions between citizens of different States as long as the matter in controversy exceeds $75,000."  *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (internal quotation marks and ellipses omitted).  Diversity jurisdiction requires complete diversity, i.e., "there is no plaintiff and no defendant who are citizens of the same State."  *Id.* (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)).  Diversity jurisdiction also requires "'reasonable probability' that the amount in controversy exceeds $75,000."  *Smulley*, 2022 WL 16753118, at *1 (first quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975); and then citing 28 U.S.C. § 1332).  Generally, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113).

4

## II.     Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing same at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing same). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).  In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n*, 678 F.3d at 187, but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 404 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**DISCUSSION**

## I.     Defendants' Rule 12(b)(1) Motion

The Court first analyzes Defendants' Rule 12(b)(1) motion, because "without jurisdiction, the [Court] lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)); *see Wakari Diakite v. United States*, No. 24-CV-7070 (VSB), 2025 WL 3074339, at *3 (S.D.N.Y. Nov. 4, 2025) ("Determining the existence of subject matter jurisdiction is a threshold inquiry . . . ." (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*,

561 U.S. 247 (2010))).  Defendants argue that diversity jurisdiction under Section 1332 is lacking in this case because the amount in controversy is less than $75,000.  (Mem., Dkt. 53, at 7–15.)

A defendant challenging diversity jurisdiction may bring either a "facial" Rule 12(b)(1) motion, i.e., one "based solely on the allegations of the complaint or the complaint and exhibits attached to it," or a "fact-based Rule 12(b)(1) motion," by which a defendant "proffer[s] evidence beyond the [p]leading," *Carter*, 822 F.3d at 56–57.  Although the parties dispute whether Defendants' Rule 12(b)(1) argument is a facial or fact-based challenge, (*see* Pl. Opp'n, Dkt. 51, at 3 n.2; Def. Reply, Dkt. 55, at 3), it is, in fact, both.  Regardless, as discussed below, the Court ultimately finds that Defendants' fact-based challenge is insufficient to overcome the sufficiency of Plaintiff's *allegations* regarding the amount in controversy being at least $75,000.[3]

## A.    Defendants' Fact-Based Jurisdictional Challenge

Defendants attack the roughly $5.5 million in damages claimed by Plaintiff by submitting sworn affidavits from Defendants' billing attorneys stating that, upon searching the "electronically searchable" billing systems used by Defendants, they have "found no [insurance] claims" submitted to Plaintiff, and "no payments to Kolb Radiology" by Plaintiff.  (Rizzo Decl., Dkt. 54, ¶¶ 6–8.)  Hence, Defendants argue that "Plaintiff has no direct 'out of pocket' losses stemming from fraudulent insurance claims submitted to it by the Defendants," and cannot claim direct damages on this basis.  (Mem., Dkt. 53, at 9 (citations omitted).)

---

[3] Defendants do not argue or suggest that diversity of citizenship is lacking, which is the other prong of the Section 1332 analysis.  *See Platinum-Montaur Life Scis., LLC*, 943 F.3d at 617 (citation omitted).  Given that the pleadings state that Plaintiff is a citizen of Vermont and all Defendants are citizens of New York, (SAC, Dkt. 38, ¶¶ 3–7), and Defendants have not disputed those facts, the Court finds diversity sufficiently established.

When a defendant brings a fact-based Rule 12(b)(1) motion, they may provide evidence outside the pleadings.[4]   *Carter*, 822 F.3d at 56–57.  "[P]laintiff[] will [then] need to come forward with evidence of their own to controvert that [evidence] presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."   *Carter*, 822 F.3d at 57 (quoting *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  "However, the plaintiff[] [is] entitled to rely on the allegations in the [complaint] if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [jurisdiction]."   *Id.*   "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to [jurisdiction]." *See id.*

Here, Defendants argue that "Plaintiff has ignored, rather than controverted, Defendants' fact-based Rule 12(b)(1) motion," and "[a]s such, these facts submitted by Defendants are uncontested."  (Def. Reply, Dkt. 55, at 2.)  This is true.  To the extent Plaintiff alleges any direct damages stemming from payments Plaintiff made directly to Defendants, Defendants' evidence effectively controverts the SAC.  While Plaintiff enjoys a presumption "that the face of the complaint is a good faith representation of the actual amount in controversy," *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 53 (2d Cir. 2018) (summary order) (quoting

---

[4] By contrast, "[a] court considering a motion to dismiss under Rule 12(b)(6) generally limits its review 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Meehan v. VIPKid*, No. 20-CV-6370 (JS) (ARL), 2023 WL 7001363, at *7 (E.D.N.Y. Aug. 29, 2023), *R&R adopted*, 2024 WL 277846 (E.D.N.Y. Jan. 25, 2024); *accord DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (citations omitted)).

*Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)), Defendants have successfully rebutted this presumption, and Plaintiff has failed to prove by a preponderance of the evidence that the alleged direct damages from any payments to Defendants would meet the statutory amount, *see Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019) (noting that party asserting subject matter jurisdiction must "prov[e] that it exists by a preponderance of the evidence" (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

However, as *Carter* makes clear, Plaintiff is not required to explicitly address Defendants' proffered evidence if such evidence is "immaterial" to Plaintiff's "plausible allegations," upon which Plaintiff can instead rely.  822 F.3d at 57.  Although the SAC alleges that Plaintiff "was induced to and did pay Defendants directly and others due to, in whole or in part, the Defendants' conduct," (SAC, Dkt. 38, ¶ 14), Plaintiff's damages claim is largely based on "legal expenses incurred and settlements paid in third-party lawsuits," (Pl. Opp'n, Dkt. 51, at 3 n.2) (explaining Plaintiff considers its amount in controversy to largely consist of "legal expenses incurred and settlements paid in third-party lawsuits").  As discussed next, the fact that Defendants might not have submitted any insurance claims directly to Plaintiff nor received any direct payments from Plaintiff is consistent with Plaintiff's theory of liability and does not undermine the damages claimed by Plaintiff as a result, albeit indirectly, of Defendants' alleged fraudulent conduct.

## B.    Defendants' Facial Jurisdictional Challenge

In the SAC, Plaintiff claims damages that are "a direct result of the false and/or misrepresentative narrative reports generated by Defendants after performing diagnostic imaging on Claimants," (SAC, Dkt. 38, ¶ 66), as well as consequential and punitive damages, (*id.* ¶¶ 67, 80).  In addition to their payments-related fact-based challenge, Defendants bring a facial

8

challenge to Plaintiff's claims of consequential, indirect, and punitive damages.[5] (Mem., Dkt. 53, at 10–14 (challenging as matter of law alleged "speculative" consequential damages based on third-party, indirect reliance and punitive damages as similarly legally unsupported); Def. Reply, Dkt. 55, at 3–7 (same).)

As previously stated, a plaintiff's amount-in-controversy allegation is generally accepted if made in good faith. *Suarez*, 720 F. App'x at 53 (citation omitted); *see also Tools Aviation, LLC v. Digital Pavilion Elecs. LLC*, No. 20-CV-2651 (PKC) (VMS), 2021 WL 4340949, at *3 (E.D.N.Y. Sep. 23, 2021) (noting that the burden on the party alleging jurisdiction is "hardly onerous, however, for [courts] recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy'" (quoting *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 814 (2d Cir. 2014))). To overcome this presumption, the party facially challenging jurisdiction under Rule 12(b)(1) must demonstrate "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Tools Aviation*, 2021 WL 4340949, at *3 (citing *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)). "[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070–71 (2d Cir. 1996) (second alteration in original) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994)). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal [on jurisdictional grounds] is not warranted." *DistributorsOutlet.com, LLC v. Glasstree, Inc., et al.*, No. 11-CV-6079 (PKC), 2016 WL 1273229, at *11 (E.D.N.Y.

---

[5] Defendants' evidence in support of their fact-based challenge focuses exclusively on the lack of payments to, or invoices from, Plaintiff, and does not touch on any of Plaintiff's other alleged grounds for recovery. (*See* Rizzo Decl., Dkt. 54; Mem., Dkt. 53, at 9–10.)

Mar. 31, 2016) (first two alterations in original) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)).  "[T]he plaintiff has no evidentiary burden" in a facial challenge. *Carter*, 822 F.3d at 56 (citation omitted).

As part of their Rule 12(b)(1) facial challenge, Defendants leverage a number of cases discussing the type of damages that can be sought in common law fraud and unjust enrichment claims.  (*See, e.g.*, Mem., Dkt. 53, at 8 (discussing New York's "out-of-pocket" damages rule).) The Court generally agrees with Plaintiff that an in-depth damages discussion is more appropriate under the Rule 12(b)(6) analysis.  (*See* Pl. Opp'n, Dkt. 51, at 4 n.4.)  And, indeed, none of the cases that Defendants cite to in support of their facial jurisdictional arguments contend with damages as part of a Rule 12(b)(1) analysis.[6]  Rather, Defendants' case law exclusively discusses damages in the context of whether plaintiffs' *causes of action* have been adequately pleaded.[7]  The standards applicable to challenges pursuant to Rule 12(b)(6)—requiring pleadings to present "facial plausibility," *Ashcroft*, 556 U.S. at 678 (citation omitted)—are more stringent than those applicable to Rule 12(b)(1), pursuant to which pleadings survive "[e]ven where the allegations

---

[6] Defendants cite to, *inter alia*, *Keystone Foods Holdings Ltd. v. Tyson Foods, Inc.*, No. 22-CV-1113, 2023 WL 3477157, at *2–3 (2d Cir. May 16, 2023) (summary order) (upholding dismissal under Rule 12(b)(6) for failure to adequately allege out-of-pocket losses under New York law; *Negrete v. Citibank, N.A.*, 237 F. Supp. 3d 112, 125 (S.D.N.Y. 2017) (applying New York law in granting Rule 12(b)(6) motion to dismiss due to, *inter alia*, failure to allege loss causation); and *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 455 (S.D.N.Y. 2003) (granting Rule 12(b)(6) motion where plaintiff failed to describe "the pecuniary or out-of-pocket loss sustained as a result of the defendants' alleged misrepresentations").  (Mem., Dkt. 53, at 8–9; *see also id.* at 10–11 (discussing non-jurisdictional case law on third-party reliance).)

[7] Additionally, some of these cases were dismissed because the plaintiffs had alleged *lost profits*, which have not been alleged here, and which are not recoverable in fraud claims.  (*See* Mem., Dkt. 53, at 9 (citing *Negrete*, 237 F. Supp. 3d at 125 (dismissing fraud claim where plaintiff alleged lost profits); *Spencer Trask Software*, 383 F. Supp. 2d at 457 (same)).)

leave grave doubt about the likelihood of a recovery," *DistributorsOutlet.com*, 2016 WL 1273229, at \*11 (citation omitted).  Thus, the Court only briefly discusses the pleading requirements for damages under Plaintiff's causes of action in order to assess whether Plaintiff's recovery is "legal[ly] impossib[le]" as required for Defendants' facial jurisdictional challenge to succeed. *Chase Manhattan Bank*, 93 F.3d at 1071 (citation omitted).

Under New York law[8], "damages [in a fraud action] are measured using the 'out-of-pocket' rule, which captures 'the actual pecuniary loss sustained as the direct result of the wrong.'" *Keystone Foods Holdings*, 2023 WL 3477157, at \*2 (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)); *see Zama Cap. Advisors LP v. Universal Ent. Corp.*, No. 24-CV-1577 (MKV), 2025 WL 968783, at \*28 (S.D.N.Y. Mar. 31, 2025) ("Under the 'out-of-pocket' rule, damages in fraud claims are 'the actual pecuniary loss sustained as the direct result of the wrong.'" (quoting *Keystone Foods Holdings*, 2023 WL 3477157, at \*2)).  This loss is "computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." *Allison v. Round Table Inv. Mgmt. Co., LP*, No. 10-CV-1144 (GBD), 2010 WL 4456648, at \*6 (S.D.N.Y. Oct. 21, 2010) (quoting *Lama Holding*, 88 N.Y.2d at 421).  These "out-of-pocket" damages include "'other consequential damages proximately caused by reliance upon the misrepresentation,' such as 'expenditures which would not otherwise have been incurred." *Barrie House Coffee Co. v. Teampac, LLC*, No. 13-CV-8230 (VB), 2016 WL 3645199, at \*11 (S.D.N.Y.

---

[8] When a plaintiff claims federal diversity jurisdiction over state law claims, "[i]n determining whether damages would be recoverable [for assessing the amount-in-controversy requirement], this Court must 'look to state law to determine the nature and extent of the right to be enforced.'" *Tang v. Grossman*, No. 19-CV-6099 (PKC) (PK), 2022 WL 307158, at \*8 (E.D.N.Y. Feb. 2, 2022) (quoting *Bloch v. Bluestone*, No. 10-CV-6216 (NRB), 2011 WL 2693518, at \*2 (S.D.N.Y. June 29, 2011)), *aff'd*, No. 22-CV-0464, 2023 WL 2229366 (2d Cir. Feb. 27, 2023) (summary order).

June 30, 2016) (quoting *Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*, 453 N.Y.S.2d 750, 755 (2d Dep't 1982)); *see id.* (finding that "[o]rdering supplies, hiring staff, committing to deliver product to customers, and taking on debt and financing charges" are "expenditures which [plaintiff] would not [have] incurred" absent the alleged fraud (second and third alterations in original) (quoting same)).

Plaintiff alleges that Defendants' false medical reports, in which Defendants "provided findings and impressions that did not exist and/or failed to report findings and impressions that would have medically established that [the injuries Plaintiff ultimately paid for] were degenerative, chronic and not acute or [causally] connected to the alleged accident," (SAC, Dkt. 28, ¶ 10), caused Plaintiff to erroneously believe that the relevant "testing was necessary," (*id.* ¶ 13), the relevant insurance claims "were legitimate," (*id.*), and any attendant general liability lawsuits were worth settling at "inflated" costs, (*id.* ¶ 14).   In essence, Plaintiff seeks its out-of-pocket costs for insurance pay-outs, litigation outlays, and settlement awards it would not have paid—or it would have paid at a lower premium—had the underlying medical reports provided by Defendants not been fraudulent.   (*See, e.g.*, *id.* ¶¶ 33–36 (alleging that Plaintiff paid "$480,000.00 for the resolution of [an] action, exclusive of litigation costs," in which Claimant D submitted "fraudulent reports and other claim documentation" for a condition of which Plaintiff's expert later found no evidence); *id.* ¶¶ 48, 58 (alleging that, "[a]s a result of the fraudulent reports issued by Defendants," Plaintiff paid "$650,000.00 . . . exclusive of litigation costs[9]" for the resolution of Claimant F's claims for injuries that "were chronic in nature and wholly unrelated to the alleged

---

[9] While the litigation costs do not appear necessary to get Plaintiff over the $75,000 pleading threshold for federal jurisdiction, the Court notes that such costs "may be recovered for fraud as out of pocket damages."   *Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*, No. 10-CV-5491 (SJB), 2020 WL 4070094, at *6 (E.D.N.Y. July 20, 2020), *aff'd*, No. 20-CV-2687, 2021 WL 5986871 (2d Cir. Dec. 17, 2021) (summary order).

accident").) Ultimately, Plaintiff alleges that it "has paid a total of $2,382,500 in settlements based on the fraudulent reports generated by Defendants to date, with further settlements imminent." (*Id.* ¶ 67.) Defendants characterize these alleged damages as "consequential,"[10] (Mem., Dkt. 53, at 1), too removed from Defendants for Plaintiff to adequately allege reliance due to third-party intermediaries, (*id.* at 10–13), and too speculative for recovery, (*id.* at 13–14).

The Court cannot conclude, based on its review of New York's out-of-pocket rule, that Plaintiff's alleged damages are legally impossible to recover. *See Chase Manhattan Bank*, 93 F.3d at 1071 (citing *Tongkook*, 14 F.3d at 785). Plaintiff has presented good faith allegations that it paid for illegitimate claims on the basis of medical reports provided by Defendants. Depending on questions of fact that are not appropriate for the Court to resolve at this stage—namely, whether the claimants' injuries were indeed caused by on-site injuries or were instead chronic, preexisting, or nonexistent—there may be a very real "difference between the value of the bargain which [Plaintiff] was induced by [Defendants' alleged] fraud to make and the amount or value of the consideration exacted as the price of the bargain." *See Allison*, 2010 WL 4456648, at *6 (quoting *Lama Holding*, 88 N.Y.2d at 421). That this difference is uncertain or speculative does not negate the presumption of good faith afforded Plaintiff's pleadings at this stage. *See Chase Manhattan*

---

[10] Defendants' citation to Plaintiff's damages discussion is in itself misleading, as it omits Plaintiff's claim for "actual" damages related to litigation and settlement costs and reimbursements, in addition to the consequential damages that Defendants highlight. (*Contrast* SAC, Dkt. 38, ¶ 67 ("Damages also include *actual* and consequential damages for payments Plaintiff made as costs for defending fraudulent lawsuits, the cost of inflated settlements made and paid out by Plaintiff on behalf of Plaintiff's insureds as a result of the fraudulent reports generated by Defendants, and/or for reimbursement for payments made to other medical providers for treatment predicated upon, in whole or in part, the fraudulent reports generated by the Defendants." (emphasis added)), *with* Mem., Dkt. 53, at 10 ("The SAC alleges that Plaintiff's damages are premised on 'consequential damages for payments Union made as costs for defending fraudulent lawsuits and/or for reimbursement for payments made to other medical providers for treatment predicated upon, in whole or in part, the fraudulent reports generated by the Defendants.'").)

*Bank*, 93 F.3d at 1070 ("If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff." (alteration in original) (quoting *Tongkook,* 14 F.3d at 785–86)); *see also Tools Aviation*, 2021 WL 4340949, at *3 ("[W]here the damages sought are uncertain, the doubt should be resolved in favor of the claimant's pleadings." (alteration in original) (quoting *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019))).

Therefore, the Court finds that Plaintiff has adequately alleged at least $75,000[11] in damages and that the Court has diversity jurisdiction over Plaintiff's claims.  Defendants' Rule 12(b)(1) motion is denied.

## II.      Defendants' Rule 12(b)(6) Motion

Defendants challenge Plaintiff's common law fraud claim on the basis that intent and causation are not sufficiently alleged, (*see* Mem., Dkt. 53, at 10, 18), and Plaintiff's unjust enrichment claim on the basis that damages stemming from Defendants' conduct cannot be proven, (*see id.* at 10).

### A.      Common Law Fraud

Plaintiff's first cause of action (Count I) is for common law fraud.  "In order to plead a claim for New York common law fraud, a plaintiff must allege that the defendant made a material misrepresentation of a fact, with knowledge of its falsity and an intent to induce reliance, that the plaintiff justifiably relied on defendant's misrepresentation, and that the plaintiff suffered damages." *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 374 (E.D.N.Y. 2012) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 883 N.Y.S.2d 147 (2009)); *accord Liberty Mut. Ins. Co. v.*

---

[11] Having found that Plaintiff has met its pleading burden under Rule 12(b)(1) with regard to actual and consequential damages from its common law fraud claim, the Court need not conduct a further assessment with regard to Plaintiff's claims for unjust enrichment and punitive damages.

*Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 273 (E.D.N.Y. 2012) (citations omitted). "Pleadings for common law claims premised on fraud are 'subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b),'" *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 198–99 (E.D.N.Y. 2018) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015)), which requires that "a party must state with particularity the circumstances constituting fraud or mistake," *id.* at 183 (quoting *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)). To satisfy this pleading requirement, the plaintiff must "detail the statements (or omissions) that the plaintiff contends are fraudulent, identify the speaker, state where and when the statements (or omissions) were made, and explain why the statements (or omissions) are fraudulent." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (citation modified) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). But "the heightened pleading standard for fraud claims does not require the plaintiffs to come forward with 'proof' at this early stage of the litigation." *Liberty Mut.*, 879 F. Supp. 2d at 273.

### 1.    Defendants' Alleged Misrepresentations of Fact

Accepting Plaintiff's factual allegations as true, as the Court must when deciding a Rule 12(b)(6) motion, *Ashcroft*, 556 U.S. at 678, Plaintiff has adequately identified the "who, what, when, where, and how of the alleged fraud." *Golf Grips Depot, Inc. v. Spark Funding LLC*, No. 21-CV-6085 (AMD) (RML), 2023 WL 11758581, at *3 (E.D.N.Y. Jan. 25, 2023) (quoting *Brumfield v. Merck & Co.*, No. 17-CV-6526 (JFB) (ARL), 2018 WL 2277835, at *4 (E.D.N.Y. May 18, 2018)). As alleged in the SAC, Defendants "made misrepresentations of facts, misled, deliberately concealed, and omitted material[] facts that they had a duty to disclose in connection with their claims for reimbursement and/or payment under New York law." (SAC, Dkt. 38, ¶ 70.) Defendants have engaged in this fraud for "at least seven years," whereby they "conducted

15

radiological diagnostics and provided findings and impressions (reports) of conditions and injuries that did not exist (or failed to report degenerative conditions for injuries that did), so as to mislead Plaintiff and others into paying for services that would not have been performed otherwise." (Pl. Opp'n, Dkt. 51, at 11 (citing SAC, Dkt. 38, ¶¶ 8, 10, 13, 14, 20, 25, 30, 35, 41, 57, 67).) Defendants do not argue that these allegations fail to sufficiently identify the "who, what, when, where, and how" of the alleged fraud.

The Court thus finds that Plaintiff has adequately alleged a "complicated scheme of alleged fraudulent activity," *Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 391 (E.D.N.Y. 2022) (quoting *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013)), and has met its pleading burden with respect to the first element of its common law fraud claim.

### 2. Knowledge of Falsity and Intent

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Gov't Emps. Ins. Co. v. Galperin*, No. 23-CV-9241 (AMD) (AYS), 2025 WL 1029433, at *6 (E.D.N.Y. Feb. 24, 2025) (alteration in original) (quoting Fed. R. Civ. P. 9(b)), *R&R adopted*, 2025 WL 909190 (E.D.N.Y. Mar. 26, 2025). However, Plaintiff must still "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015)) (internal quotation marks omitted). It can do so either "(a) by alleging facts to show that [D]efendant[s] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d. Cir. 2006)). "If an inference is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged,' then it is sufficiently strong." *Natale v. 9199-4467 Quebec Inc.*, No. 21-CV-6775 (JS) (SIL), 2023 WL 4850531, at *10 (quoting *Loreley Fin.*, 797 F.3d at 170); *see id.* ("At the pleadings stage, the alleged fraud need

16

only be <u>plausible</u> based on the complaint; it need not be more likely than other possibilities." (quoting *Mogull v. Pete and Gerry's Organics, LLC*, 588 F. Supp. 3d 448, 455 (S.D.N.Y. 2022))).

Here, Plaintiff alleges motive and opportunity as well as recklessness. (*See* Pl. Opp'n, Dkt. 51, at 12–13.) "Motive can be proved by showing that concrete benefits could be realized by one or more of the alleged misrepresentations or omissions. Opportunity can be proved by a showing of the 'means and likely prospect of achieving concrete benefits by the means alleged.[']" *Gov't Emps. Ins. Co. v. Alrof, Inc.*, No. 11-CV-4028 (SLT) (RER), 2013 WL 9600668, at *4 (E.D.N.Y. July 19, 2013) (internal citation omitted) (first citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994); and then quoting same), *R&R adopted sub nom. Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.*, No. 11-CV-4028 (SLT) (RER), 2013 WL 5209415 (E.D.N.Y. Sep. 13, 2013). Plaintiff alleges that "Defendants . . . understood and agreed that in turn for providing the false medical reports [which allegedly included misrepresentations and omissions] to referring medical providers, . . . Defendants would continue to have patients referred to them," (SAC, Dkt. 28, ¶ 11), and/or have an "increased number of patients . . . referred to them in exchange for authoring favorable reports," (*id.* ¶ 64). Defendants counter that "profit from more patient referrals" is a motive that "is ascribable to every for-profit medical practice," and "[t]he provision of ordinary course medical services is insufficient" to show fraudulent intent under the Rule 9 pleading standard. (Mem., Dkt. 53, at 17 (first citing *Cardregistry, Inc. v. Collectors Universe, Inc.*, No. 22-CV-5308 (KAM) (CLP), 2024 WL 1241941, at *8 (E.D.N.Y. Mar. 22, 2024); and then citing *Biwen Liang v. Home Reno Concepts LLC*, No. 17-CV-3503, 2018 WL 4954162, at *8 (E.D.N.Y. Oct. 12, 2018), *aff'd sub nom. Liang v. Home Reno Concepts, LLC*, 803 F. App'x 444 (2d Cir. 2020) (summary order)).) But Plaintiff is not alleging that Defendants sought to profit from "the provision of ordinary

17

medical services" or legitimate "patient referrals," (*see* Mem., Dkt. 53, at 17); rather, Plaintiff

claims that Defendants sought to obtain profits to which they were not entitled through fraud.[12]

While case law firmly establishes, and the Court agrees, that "generalized financial

incentives that underlie virtually every business's relationship with its customers" is insufficient

to adequately allege intent, *Cardregistry*, 2024 WL 1241941, at *8, a "strong motive to receive

reimbursements to which [Defendants] were not entitled" does, *see Gov't Emps. Ins. Co. v. Erlikh*,

No. 16-CV-7120 (DLI) (SJB), 2019 WL 1487576, at *6 (E.D.N.Y. Feb. 28, 2019). *See also Gov't*

*Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-0617 (FB) (RER), 2022 WL 772737,

at *8 (E.D.N.Y. Feb. 23, 2022) (finding plaintiff's allegations that the defaulting defendants were

collectively motivated to receive substantial payments to which they were not entitled, and had the

opportunity and ability to receive those payments by submitting fraudulent claims to plaintiff,

"sufficient to infer" the requisite intent), *R&R adopted*, 2022 WL 768360 (E.D.N.Y.

Mar. 14, 2022); *Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277 (ENV)

---

[12] Defendants attempt to bolster their characterization of the SAC by arguing that the "[a]llegations of sporadic misdiagnoses—even if assumed to be true for motion purposes—do not strongly indicate fraud" but rather "mere medical disagreement." (Mem., Dkt. 53, at 16.) This argument is unavailing. Indeed, the case law Defendants cite in support of their position does not exactly help them. In *State Farm Mutual Automobile Insurance Co. v. Tri-Borough NY Medical Practice P.C.*, 120 F.4th 59 (2d Cir. 2024), in deciding whether to enjoin pending state-court proceedings involving health care providers seeking to recover on allegedly fraudulent reimbursement claims, the Second Circuit found that the plaintiff insurance company had adequately alleged "pay-to-play" arrangements across a wide swath of individual claims, even if these individual claims on their own might not have suggested a "massive RICO scheme." *Id.* at 98. Similarly, in *State Farm Mutual Automobile Insurance Co. v. Parisien*, 352 F. Supp. 3d 215 (E.D.N.Y. 2018), the district court granted enjoinment of pending no-fault recovery actions, because plaintiff had adequately alleged that the defendants had "systematically and concertedly administered treatments in a rote fashion, independent of the clinical needs of the patient, in such a combination as to maximize reimbursements." *Id.* at 229. The *Parisien* court found that while the defendants' fraud was not necessarily apparent on a "case-by-case" basis, it came into focus "through [a] tapestry of facts." *Id.* While the instant matter's posture is different, Plaintiff here has similarly alleged a tapestry of facts that, taken together, suggest a pattern of fraudulent medical reports rather than "sporadic misdiagnoses."

(SMG), 2016 WL 11395017, at \*4 (E.D.N.Y. Feb. 17, 2016) ("[D]efendants had a strong motive to receive reimbursements to which they were not entitled, as well as the opportunity to receive reimbursements through fraudulent submissions to plaintiffs."), *R&R adopted sub nom. Gov't Emps. Ins. Co. v. Premier Pro. Servs., LLC*, No. 14-CV-5277 (ENV) (SMG), 2016 WL 1071099 (E.D.N.Y. Mar. 18, 2016); *Allstate Ins. Co. v. Lyons*, No. 11-CV-2190 (PKC) (VVP), 2015 WL 13735435, at \*4 (E.D.N.Y. Mar. 10, 2015) ("Since the purpose of submitting these false claims was to obtain funds the defendants were not entitled to obtain, there was an unmistakable intent to have the plaintiffs rely on the false claims."), *R&R adopted*, Order dated Mar. 31, 2015; *Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, No. 12-CV-2157 (KAM) (VMS), 2013 WL 829302, at \*7 (E.D.N.Y. Feb. 11, 2013) (finding that plaintiff's allegation that defendants submitted fraudulent claims to the plaintiff insurance company intentionally in a scheme for profit gave "rise to a strong inference of fraudulent intent and is sufficient to establish the scienter requirement" (citing *Lerner*, 459 F.3d at 290)), *R&R adopted as modified*, 2013 WL 829274 (E.D.N.Y. Mar. 6, 2013). To equate the pursuit of financial gain to which an entity is not entitled with "generalized financial incentive[]," *Cardregistry*, 2024 WL 1241941, at \*8, would render every business an aspiring fraudster, the common law fraud cause of action a nullity, or both.

Just as in these cases, Plaintiff's allegations paint the picture of a business entity seeking funds to which they were not entitled—i.e., "Defendants knowingly profited from reimbursements for the alleged imaging and diagnostic services rendered by the Kolb Practice and/or Kolb that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident or did not exist," (SAC, Dkt. 38, ¶ 63)—and not an entity merely seeking "normal compensation for professional services rendered," *see Biwen Liang*, 2018 WL 4954162, at \*8 (citation omitted). Furthermore, Defendants had the requisite opportunity to effectuate this fraud

19

through their submissions of allegedly fraudulent medical reports which, Plaintiff alleges, Defendants knew would be funneled into reimbursement claims.[13] (*See* SAC, Dkt. 38, ¶ 66.) The Court thus finds that Plaintiff has adequately alleged the requisite intent for its common law fraud claim.[14]

### 3.    Justifiable Reliance

Under New York law, a "fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment." *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016). Typically, "[t]he reliance element of fraud cannot be based on indirect communications through a third party unless the third party acted as a mere conduit in passing on the misrepresentations to a plaintiff," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 260 (2d Cir. 2021) (citing *Pasternack*, 27 N.Y.3d at 828–29), and "the defendant made the misrepresentation with the 'intent that it be communicated to the plaintiff and that the plaintiff rely on it,'" *Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 174 (S.D.N.Y. 2021) (quoting same). "When the defendants' misrepresentations are 'filtered through' a third party's 'own process of evaluation' or the third party plays 'a significant role in choosing

---

[13] Defendants argue that "the validity of Claimants' injuries has already been subject to testing" because many of the Claimants submitted claims pursuant to workers' compensation, where "robust adjudicatory procedures exist to root out fraud," or are "lien Claimants" who have "apparently had the veracity of their injuries tested through full-blown litigations." (Mem., Dkt. 53, at 18.) These facts, Defendants maintain, undercut the inference of fraudulent intent and differentiates this case from the "no fault" lawsuits filed in this district. (*Id.* at 19 n.7 (citing *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 228 (E.D.N.Y. 2009)).) However, at this stage of the case, the Court cannot consider such extrinsic factual assertions nor their purported impact on the sufficiency of Plaintiff's allegations regarding Defendants' fraudulent intent.

[14] Plaintiff also alleges recklessness given the extent and "pattern of fraudulent conduct." (*Id.* ¶¶ 67, 80.) Plaintiff alleges that, as part of the fraudulent scheme, Defendants submitted fraudulent medical reports that were used in at least 44 lawsuits. (*See id.* ¶ 60 (citing Ex., Dkt. 38-1).) Given the Court's finding that Plaintiff has adequately alleged intent, further analysis of Plaintiff's recklessness claim, which is admittedly bare-bones, is unnecessary.

what information it wanted to receive and, in addition, what it deemed worthy of communicating,' the third party has not acted as a mere conduit and the theory is not viable." *Loreley Fin.*, 13 F.4th at 260 (quoting *Sec. Investor Prot. Corp. v. BDO Seidman*, 95 N.Y.2d 702, 710–11 (2001)).

Defendants argue that Plaintiff's causal chain alleges exactly the type of third-party reliance barred by New York law.  (Mem., Dkt. 53, at 10–13.)  Defendants allege that they "never communicated directly with Plaintiff" nor "submitted a claim to Plaintiff"; "[r]ather, Plaintiff purportedly received the allegedly false imaging reports potentially and solely through the insurance submissions of Claimants' treating physicians or attorneys litigating Claimants' personal injury lawsuits." (*Id.* at 11–12 (citing SAC, Dkt. 38, ¶ 62).)  Defendants further argue that "[t]here is no basis to conclude that Defendants intended that Kolb Radiology imaging reports would reach Plaintiff through the insurance submissions of treating physicians and attorneys; *it neither invoiced nor ever received payments from Plaintiff*, and the SAC details no allegations that Defendants were aware of the existence of Plaintiff." (*Id.* at 13.)  Plaintiff counters that it received the "actual documents generated by Defendants," and that "Plaintiff was among the intended recipients of Defendants' false representations because Defendants, in the usual course of their business, evaluated patients who were engaged with law firms and in litigation and therefore was aware that insurance carriers would receive Defendants' documentation related to diagnosis." (Pl. Opp'n, Dkt. 51, at 18–19 (citing SAC, Dkt. 38, ¶¶ 12, 66).)

Based on these allegations, the Court finds that Plaintiff has adequately alleged reliance. Defendants' focus on insurance submissions prepared by third parties elides the fact that Plaintiff's allegations revolve chiefly around Defendants' own allegedly fraudulent medical reports, which were merely distributed or relayed to Plaintiff by third parties.  (*See, e.g.*, SAC, Dkt. 38, ¶ 29 ("Defendants knew that their reports were false and misleading, and intentionally transmitted them

to Dr. Weinstein, Plaintiff and others whom . . . Defendants also knew and/or should have known would use the reports as a basis to render treatment, engage in litigation, and seek payments and settlements.")); *Loreley Fin.*, 13 F.4th at 260 (noting sufficient reliance "when the third party acts as a scrivener by transcribing and distributing a defendant's representations without filtering or modification"); *Pasternack*, 27 N.Y.3d at 828–29 (differentiating case at hand from *Eaton Cole & Burnham Co. v. Avery*, 83 N.Y. 31, 35 (1880), which found third-party reliance where third party "acted as a conduit to relay the false statement to plaintiff, who then relied on the misrepresentation to his detriment"). Plaintiff alleges that Defendants' medical reports, *as a whole*, were "false and misleading."[15] (*See, e.g.*, SAC, Dkt. 38, ¶ 34.) Neither Plaintiff nor Defendants mention any modification of these underlying medical reports, regardless of whether these were accompanied by additional information provided by third parties. Thus, these medical reports are "the false statement[s]" relayed, via conduits that did not pick and choose which information to receive or communicate, to Plaintiff. *See Red Mountain Med. Holdings*, 563 F. Supp. 3d at 174 (quoting *Pasternack*, 27 N.Y.3d at 827–29).

Plaintiff's allegations (and common sense) amply support the inference that Defendants knew and intended that insurance companies like Plaintiff would receive and rely on Defendants' reports, since the insurance companies are the ones who pay the health care reimbursement requests submitted by the insured patients, i.e., the Claimants. It defies logic that Defendants *only* intended to deceive the third-party physicians and attorneys who received Defendants' reports in the first instance because, in order for Defendants to profit from their fraud, the third-party doctors

---

[15] Defendants' argument that "radiologists have a limited role in the medical services system," which does not include diagnosis nor representations regarding the necessity of a given treatment, (Mem., Dkt. 53, at 17–18), does little to undercut Plaintiff's allegations, which focus on the reports themselves as the trigger for the subsequent ballooning treatment and related costs, (*see, e.g.,* SAC, Dkt. 38, ¶ 34).

or attorneys had to seek reimbursement from Plaintiff for medical services that were provided by Defendants or based on Defendants' fraudulent reports.  (*See* AC, Dkt. 38, ¶ 34 (alleging that Defendants knew that Plaintiff "would pay for . . . Defendants' false radiology reports").)  Without Defendants' reports substantiating accident-related injuries, the third-party doctors and attorneys would not be paid by Plaintiff, and those third parties would not keep sending patients to Defendants.  It would make no sense for Defendants to defraud only the treating physicians and other third parties; the party that must be deceived in order for everyone involved in the scheme to profit is Plaintiff, i.e., the entity paying for all of the services rendered as part of the scheme.

At a minimum, Plaintiff has presented a question of fact regarding Defendants' intent that is sufficient to survive a motion to dismiss.  *See Spencer Trask Software*, 383 F. Supp. 2d at 458 ("Courts applying New York law generally have found that the question of a plaintiff['s] reasonable reliance raises issues of fact that should not be resolved on a motion to dismiss." (quoting *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1324 (S.D.N.Y.1997)).  Indeed, the case relied on heavily by Defendants is a decision made at the summary judgment stage, after significant fact development.  (*See* Mem., Dkt. 53, at 12–13 (discussing *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2019 WL 5696148 (E.D.N.Y. Sep. 30, 2019)).)  The Court declines to decide the factual question of whether Defendants intended to deceive Plaintiff when they produced allegedly false medical reports at the motion to dismiss stage.

Accordingly, Plaintiff has sufficiently alleged the third element of its common law fraud claim.

### 4.    Injury

"The final prong for common law fraud is that the plaintiff suffered damages or injury 'caused by the misrepresentation or omission.'"  *Erlikh*, 2019 WL 1487576, at \*7 (citing

*Lyons*, 2015 WL 13735435, at *2).  As previously discussed, *see supra*, the Court finds that Plaintiff has adequately alleged out-of-pocket losses.  What remains is whether these injuries were "sustained as a result of . . . [D]efendants' alleged misrepresentations." *Negrete v. Citibank, N.A.*, 237 F. Supp. 3d 112, 125–26 (S.D.N.Y. 2017) (quoting *Spencer Trask Software*, 383 F. Supp. 2d at 455), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (summary order).

Taking Plaintiff's factual allegations as true, Defendants falsely documented medical injuries or conditions that were not present or omitted injuries indicating chronic or preexisting conditions in their medical reports.  These reports provided the basis for additional medical treatment and attendant legal claims, litigation, and settlements, which resulted in payments by Plaintiff to Claimants and health care providers. (*See, e.g.*, SAC, Dkt. 38, ¶¶ 29–30.)  It is precisely these claims, litigation, and settlements that Plaintiff claims as damages.  The Court therefore finds that Plaintiff has adequately alleged that its "reliance [on Defendants' misrepresentations] caused injury." *Spencer Trask Software*, 383 F. Supp. 2d at 452 (citing, *inter alia*, *Lama Holding*, 88 N.Y.2d at 421).

*       *       *

Having found that Plaintiff has adequately alleged all the requisite elements for a common law fraud claim, the Court denies Defendants' motion to dismiss Plaintiff's first cause of action against Defendants Kolb and Kolb Radiology.

### B.      Unjust Enrichment

Plaintiff's second cause of action (Count II) is for unjust enrichment.  "To state a claim for unjust enrichment under New York law[,] a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Zama Cap. Advisors*, 2025 WL 968783, at *24 (first citing *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012); and then citing *Twohig v.*

24

*Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021)).  Plaintiff relies on the same allegations supporting its common law fraud claim for its unjust enrichment claim.  (*See* SAC, Dkt. 38, ¶¶ 69–87.)  In seeking the dismissal of this claim, Defendants essentially raise one of their arguments relating to Plaintiff's fraud claims, namely, "that Plaintiff never paid the Defendants anything, [thus] it cannot establish that [Defendants] retained any unwarranted benefits at its expense that can be recovered."  (Mem., Dkt. 53, at 15 (citing *Marino v. Grupo Mundial Tenedora, S.A.*, No. 10-CV-4126 (RWS), 2011 WL 1142887, at \*6 (S.D.N.Y. Mar. 17, 2011)).)[16]

"[T]he measure of damages for an unjust enrichment claim is based on the amount of benefit retained by the defendant, rather than by a plaintiff's loss."  *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276 (KAM) (AKT), 2020 WL 130423, at \*5 (E.D.N.Y. Jan. 9, 2020) (quoting *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 809–10 (S.D.N.Y. 2012)).  Here, Plaintiff has adequately alleged that Defendants have obtained monetary benefits to which they are not entitled through fraud perpetrated on Plaintiff and others.  Defendants' focus on whether this benefit was conferred directly is irrelevant, and Defendant offers no case law to the contrary.  *See Krause v. Kelahan*, 161 F.4th 66, 87 (2d Cir. 2025) ("Courts are not obligated to invent arguments that parties do not make or to scour the record for support for the parties' claims.")

The Court therefore denies Defendants' motion to dismiss Plaintiff's unjust enrichment claims against Defendants Kolb and Kolb Radiology.

### C.    Claims against Defendant Liriano

Plaintiff has made no particularized allegations against Defendant Liriano, and so the Court dismisses both of Plaintiff's causes of action against her.

---

[16] Defendants' discussion of unjust enrichment is wholly focused on whether Plaintiff can recover any damages based on this claim.  (*See* Mem., Dkt. 53, at 15.)

25

**D.      Declaratory Relief**

Finally, pursuant to 28 U.S.C. § 2201, Plaintiff requests that the Court: "(a) [issue] [a] declaration that Defendants, at all times relevant, have sought reimbursement for providing fraudulent healthcare records in violation of New York law; (b) [d]eclare that Defendants' activities are unlawful; (c) [d]eclare that Plaintiff is entitled to the return of payments made directly to the Defendants as a result of Defendants' unlawful conduct; and (d) [s]uch other relief as the Court deems just and proper." (SAC, Dkt. 38, ¶ 91.)  Plaintiff alleges this as their third cause of action (Count III).  (*See id.* at 22.)  But declaratory relief is a remedy, not an independent cause of action.  *Haller v. Usman*, No. 24-CV-0977 (KPF), 2025 WL 605572, at *9 (S.D.N.Y. Feb. 25, 2025) (collecting cases).  Though Defendants do not challenge Count III separately, they seek to dismiss Plaintiff's SAC in its entirety.  (Mem., Dkt. 53, at 1.)  The Court grants Defendants' motion to dismiss as to Count III, but "[t]his ruling should **not** . . . be construed as a finding that Plaintiff may **not** seek a declaratory judgment as a remedy for [its] surviving claims." *Haller*, 2025 WL 605572, at *10 (emphasis added).

## CONCLUSION

Accordingly, the Court denies Defendants' motion to dismiss Counts I & II as to Defendants Kolb and Kolb Radiology; grants the motion to dismiss Count III as to Kolb and Kolb Radiology; and grants the motion to dismiss in its entirety as to Defendant Liriano. As this is Plaintiff's Second Amended Complaint and Plaintiff has previously been afforded the opportunity to amend its Complaint to add further detail to its allegations, (*see* 2/13/2025 Min. Entry (granting Plaintiff leave to file the SAC)), the Court declines to grant Plaintiff leave to amend yet again to plead further details as to Defendant Liriano. Defendant Liriano is thus dismissed from this action. Counts I & II shall proceed against Defendants Kolb and Kolb radiology.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 5, 2026
      Brooklyn, New York

27